UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PLATINUM OIL PROPERTIES, L.L.C.,

                                           No. 09-10832-jll
                                           Chapter 11

                Debtor.

## MEMORANDUM OPINION

This matter is before the Court on the First Interim Fee Application of Bradley Arant Boult Cummings LLP (the "Fee Application"), filed November 2, 2009. (Docket No. 149). Bradley Arant Boult Cummings LLP ("BABC" or "Counsel") is bankruptcy counsel for Platinum Oil Properties, L.L.C. ("Debtor"), the debtor-in-possession in this case. The Fee Application seeks allowance of compensation for Counsel in the amount of $151,139.36 for fees and $4,646.12 for expenses. The Jicarilla Apache Nation ("Nation") filed the only objection to the Fee Application.

The Nation did not object to the amount of fees or expenses charged, but asserts that the Court should deny allowance of the requested compensation under 11 U.S.C. §328(c) on two grounds: first, the Nation asserts that Counsel, by representing Madison Capital Company, Inc., LLC ("Madison") and Sagebrush Holdings/O&G, LLC ("Sagebrush"), represents an interest adverse to interest of the estate; and second, the Nation asserts that Counsel failed to make proper disclosure in its application to be employed by the Debtor and in Counsel's statement filed pursuant to Bankruptcy Rule 2014(b).[1] Specifically, the Nation asserts that Counsel failed to properly disclose (a) the nature or extent of its representation of Madison and Sagebrush; (b) that Madison and/or Sagebrush claim ownership of the assets that

---

[1] The Nation also objected to Sagebrush making a capital contribution to Debtor to fund payment of Counsel's fees, but withdrew that objection after Debtor disclosed the source of the funds.

the Debtor asserts are the sole or principal assets of the estate; and (c) that if Debtor's purported transfer to Star Acquisition VII, LLC ("Star VII) is held to be void *ab initio* as Debtor asserts, then Madison and Sagebrush will hold breach of contract claims against the Debtor. Nation's Objection to Fee Application (Docket No. 156).

The Court held a preliminary hearing on the Fee Application on December 3, 2009, and a continued preliminary hearing on the Fee Application on December 11, 2009. Counsel appeared at the hearings as noted on the record. The Court took the matter under advisement. The Court, after considering the oral and written arguments by counsel, and the record in this bankruptcy case finds and concludes as follows.

PROCEDURAL BACKGROUND

Debtor commenced its chapter 11 case on March 2, 2009. Debtor asserts lessee or other interests in two oil and gas leases: Oil and Gas Mining Leases-- Tribal Indian Lands, under which The Jicarilla Apache Tribe of Indians (the "Jicarilla Nation") is lessor, dated March 14, 1951 and April 18, 1966, respectively, and commonly known as Lease 71 (hereafter "Lease 71") and Lease 363 (hereafter "Lease 363").[2] Lease 71 and Lease 363 are hereinafter together called the "Leases." Debtor's interests in or pertaining to the Leases, if any, comprise substantially all of the assets of the estate.[3]

There are three motions unrelated to the Fee Application now pending before the Court, two filed by the Debtor and one by the Nation. On March 6, 2009, Debtor filed a Motion of the Debtor for an Order Authorizing Assumption of Leases (Docket No. 10) (the "Motion to Assume"). The Nation objected to the Motion to Assume (Docket No. 18) asserting, among other things, that Debtor has no interest in the Leases and therefore no

---

[2] See Motion of the Debtor for an Order Authorizing Assumption of Leases, pp. 1-2; Docket No. 10.
[3] Debtor's Schedules, Docket 1; Testimony of David R. Lionette at 11 U.S.C. §341(a) meeting in this case, Tr., pp. 4-5, attached as Exhibit A to the Nation's Motion to Dismiss, Docket 43.

-2-

leasehold interest that may be assumed. BP America Production ("BP") also objected to the Motion to Assume (Docket No. 98) on the ground that Debtor as a condition to assuming Lease 71 must expressly assume all lease obligations, cure all defaults, and provide adequate assurance of futures performance of lease obligations, including payment of any past due royalties and performance of any plug and abandonment obligations. Enervest Energy Ltd. ("Enervest") also objected to the Motion to Assume, adopting the objections of both the Nation and BP. (Docket No. 105).

On April 10, 2009, the Debtor filed a Motion for Order Authorizing Secured and Super-Priority Financing (Docket No. 27) ("Motion for DIP Financing") in which it seeks to borrow up to $950,000 from Sagebrush to operate the wells subject to the Leases, and to perform its obligations as lessee under the Leases. The Nation and BP objected. (Docket Nos. 38 and 109).

On May 11, 2009, the Nation filed a Motion to Dismiss Debtor's Chapter 11 Case (Docket No.43). The Debtor and BP objected. (Docket Nos. 48, 75 112).

The threshold issue in this bankruptcy case that needs to be decided prior to consideration of the Motion to Assume, Motion for DIP Financing and the Motion to Dismiss is whether and to what extent the Debtor owns interests in or pertaining to the Leases (the "Threshold Issue").[4] If Debtor owns interests in or pertaining to the Leases, then the Court will determine whether Debtor's interest in the Leases may be assumed under 11 U.S.C. §365, and whether Debtor may borrow funds to develop the Leases. Further, after it is determined

---

[4] For purposes of this opinion, references to an interest in the Leases or assignment of the Leases, or simply to the Leases as the context indicates, refers to the lessee's interest, working interests, net profits interests, royalty interests, operating rights and any other interest and/or rights in or pertaining to the Leases, as applicable. For purposes of this opinion, the exact nature of those interests is not material.

-3-

whether Debtor has an interest in or pertaining to the Leases, the Court will determine whether this case should be dismissed.

On June 15, 2009, the Nation commenced Adversary Proceeding No. 09-1087-j in this bankruptcy case seeking a declaratory judgment on the Threshold Issue. On August 21, 2009 the Nation filed a Motion for Summary Judgment on that issue.

On August 31, 2009, the Court held a status conference in both the bankruptcy case and adversary proceeding, at which the Debtor, Nation, Department of Interior ("DOI"), BP, and Enervest, among others, appeared by counsel. DOI complained that it should have been joined in the adversary proceeding. Without objection from any of the parties appearing at the status conference, the Court directed the Nation to refile its Motion for Summary Judgment in the bankruptcy case as part of the contested matters arising from the Motion to Assume, Motion for DIP Financing and Motion to Dismiss, and gave the DOI, BP and Enervest until September 15, 2009 to file objections or additional objections to those motions. (Order entered September 18, 2009, Docket No. 115). This procedure is designed to allow any party in interest wishing to file an objection to any of the motions an opportunity to participate in the ligation of the Threshold Issue in the bankruptcy case, and would also bind any such party in interest to the decision reached on the Threshold Issue.[5]

In accordance with the Order entered September 18, 2009, on September 13, 2009 the Nation refiled its Motion for Summary Judgment in the bankruptcy case (Docket No. 103). The Debtor filed an initial response, as directed by the Court. (Docket No. 107). The parties are conducting discovery relating to the issues raised by the Motion for Summary Judgment pursuant to an order of this Court. (See Docket No. 120).

---

[5] On September 15, 2009, BP and Enervest filed objections to the Motion to Assume, Motion for DIP Financing and/or Motion to Dismiss. (Docket Nos. 105, 109, and 112). DOI elected not to object to any of those motions.

On September 15, 2009, DOI filed a Motion to Withdraw the Reference (Docket No. 111) with respect to the bankruptcy case. (Docket No. 111). The Motion to Withdraw the Reference is pending.

## THE STAKEHOLDERS IN THIS CASE

There are a total of eight creditors in this case that are either scheduled by the Debtor or who filed a proof of claim. The creditors consist of four mechanics lien claimants (the claims total $594,603.12),[6] the Nation ($8,157,604.34),[7] New Mexico Taxation & Revenue Department ($18,307.17 as an unsecured priority claim and $2,794.88 as an unsecured nonpriority claim);[8] BP ($95,206.25 plus unliquidated amounts),[9] and four unsecured claims. DOI is also a stakeholder by virtue of its interest relating to certain trust assets it manages for the Nation, and other statutory and regulatory duties. Finally, Sagebrush, as owner of Debtor's membership interests, and the owners of Sagebrush's member interests, are parties affected by this bankruptcy case.

The Nation and DOI assert that the Leases are not property of the Debtor's bankruptcy estate. According to the documentation attached to their proofs of claim, the four mechanics lien claimants supplied materials or rendered services to Star VII, not the Debtor. It appears

---

[6] The Debtor scheduled each of the mechanic's lien claims with the notation "non-recourse and validity of lien disputed." Three of the four holders of mechanic's lien claims, with claims totaling $538,891.51, filed proofs of claim. The documentation attached to each proof of claim reflects that the claims are based on materials or services provided or rendered to Star VII, not to the Debtor. One of the claimants, J&S Trucking, also asserts a $17,195.77 unsecured claim. The documentation attached to J&S Trucking's proof of claim reflects that its unsecured claim, like its secured claim, is based on materials or services provided or rendered to Star VII, not to the Debtor.

[7] The Nation's claims consist primarily of plug and abandonment claims, civil penalty claims, and environmental assessment and clean up claims.

[8] New Mexico Taxation's claim states for the period in which the taxes were incurred, "Platinum was identified as the operator of the subject properties," Star VII paid the production taxes on behalf of Platinum and reported the volumes and values to Taxation and Revenue upon which its tax claim is based. The unsecured nonpriority portion of the claim consists of penalties.

[9] BP's claim is based on royalties that the Mineral Management Service ("MMS") has ordered BP to pay arising from Star VII's operation of Lease 71. BP disputes it owes the royalties. BP's unliquidated claim is based on any additional amounts MMS, the Nation, or any other party may assert BP owes in connection with Lease 71, and any environmental liability that may be asserted against BP in connection with that Lease.

their lien claims would be stronger if the Leases were not property of the estate, and Star VII were in the chain of title to the Leases. BP, at a preliminary hearing on the Fee Application, supported Debtor's position that Counsel does not represent an interest adverse to the estate. The only remaining creditor, New Mexico Taxation & Revenue Department, has a relatively small claim

COUNSEL'S REPRESENTATION OF THE DEBTOR,
SAGEBRUSH AND/OR MADISON

Counsel represents the Debtor in this bankruptcy case, represented Sagebrush prior to commencement of this bankruptcy case, and represents Madison in various matters. In its disclosure filed pursuant to Bankruptcy Rule 2014(a) (Docket No. 3), Counsel stated:

> To the best of my knowledge, no member of BABC holds or represents an interest adverse to this estate and all members are "disinterested" persons under the Bankruptcy Code. BABC discloses, however, that (i) certain attorneys at BABC have represented Sagebrush Holdings/O&G, LLC ("Sagebrush"), which owns 100% of the Debtor's membership interests, and (ii) certain attorneys at BABC represent Madison Capital Company, LLC ("Madison"), which may indirectly own an interest in Sagebrush. Sagebrush may be an interested party in this case. To the extent Sagebrush is an interested party, BABC does not represent Sagebrush in this case. The Debtor is aware of this representation and does not view this representation as a conflict.

In a Declaration of Roger G. Jones filed December 2, 2009 (Exhibit B, Docket No. 160), Counsel further stated: (a) that it represented Madison and Sagebrush prior to commencement of this bankruptcy case in connection with Sagebrush's acquisition of Debtor's membership interests, (b) that Counsel has not represented Sagebrush since such acquisition, which occurred prior to commencement of Debtor's chapter 11 case; (c) that Counsel represented Madison in various matters, including in the Star VII bankruptcy case, and (d) that Madison did not assert in the Star VII bankruptcy case that Madison or Sagebrush owned Debtor's working interests and operating rights under Leases 71 and 363, but

-6-

presented evidence that Star VII never owned those interests and could not have transferred them to Madison or Sagebrush.

In Debtor's Response to The Jicarilla Apache Nation's Objection to Debtor's Counsel's Fee Application (Docket No. 160) Debtor asserts:

> Moreover, Debtor fully disclosed Madison and Sagebrush's interests to the Jicarilla and all parties in interest in connection with Debtor's motion to assume its operating rights and working interests in the Jicarilla Leases.
>
> . . . .
>
> Additionally, although Star Acquisition VII conveyed certain real and personal property to Madison, this transfer did not include the operating rights or working interests in the Jicarilla Leases because, as the Colorado Bankruptcy Court found, Star Acquisition VII never had any interest in those operating rights or working interests that it could assign. Madison's position in Star Acquisition VII, thus, was exactly the same as Debtor's position in this case.

### THE RELATIONSHIP BETWEEN AND AMONG THE DEBTOR, SAGEBRUSH AND MADISON.

The Debtor is a wholly owned subsidiary of Sagebrush. The Nation asserts that Madison Capital Company is "Sagebrush's ultimate interest holder"[10] and directly or indirectly controls Sagebrush and the Debtor.[11] The Debtor disputes that Madison owns an interest in Sagebrush,[12] but contends that even assuming _arguendo_ it were true and that Madison controls Sagebrush, Counsel by representing Madison would not represent an interest adverse to the estate.

---

[10] See The Nations' Objection to the Fee Application, ¶2 (Docket No. 156).
[11] At the first meeting of creditors in this case, Mr. Lionette testified that Madison has an ownership interest in two entities that own 100% of Sagebrush. Tr. At 24-25.
[12] Debtor asserts that FRI Investing Holdco, LLC ("FRI") owns all Sagebrush's membership interests; that two investment funds own FRI. (Debtor's Memorandum of Law In Support of Debtor's Counsel's Fee Application, p2., n2; Docket No. 166.)

The Debtor designated David R. Lionette as the responsible officer of the debtor corporation to act on its behalf in the bankruptcy case. See Docket No. 151. As of August 17, 2009, David R. Lionette was senior vice President of Madison Capital Management LLC. (See Docket No. 136, Exhibit G). The relationship between Madison Capital Company and Madison Capital Management LLC is not of record in this case.

THE CONTENTIONS OF THE PARTIES

The Nation asserts that Debtor and Madison each claim to own the working interests and operating rights under the Leases; that Counsel represents both Debtor and Madison; and that Counsel by representing the Debtor and a competing claimant to the Leases represents a party that holds an adverse interest to the estate.

Consideration of whether Counsel represents an interest adverse to the estate requires a review of the contentions of the parties relating to ownership of the Leases.

1.     <u>The Debtor's Contentions Relating to Ownership of the Leases</u>

The Debtor contends that in a bankruptcy case entitled *In re Golden Oil Company*, Case No. 03-36974-82-11 (Bankr. S.D. Tex. 2003) (the "Golden Bankruptcy Case"), the Bankruptcy Court entered an order enforcing a settlement under which interests in the Leases were to be assigned to the Debtor and in fact were assigned to Debtor. The Debtor contends that any required approvals of such assignment of the Leases on the part of the United States Bureau of Indian Affairs ("BIA") and/or the Nation were given, and the transfer of the interests in the Leases was valid and enforceable. The Debtor further contends that it later executed an assignment of its interests in the Leases to Star Acquisition VII, LLC ("Star VII), and Star VII thereafter executed an assignment of any interest it had in the Leases to Sagebrush. The Debtor contends that the purported transfers of the interests in the Leases by

-8-

the Debtor to Star VII, and by Star VII to Sagebrush, each were void *ab initio* because necessary approvals of those transfers by the BIA and/or Nation were not given, and therefore the Debtor is still the owner of the interests in the Leases.[13]

Finally, the Debtor contends that that any purported cancellation or termination of its interests in the Leases by the Nation or DOI was ineffective because of noncompliance by the DOI and/or Nation with requirements in the Leases and applicable federal regulations.

### 2. The Nation's Contentions Relating to Ownership of the Leases

The Nation contends that Debtor did not acquire any interest in the Leases in connection with the Golden Bankruptcy Case or otherwise. The Nation contends that Golden purported to assign the Leases to McKay-Lopspich Group ("MLG"), not to the Debtor (except for a *diminius* interest); that MLG transferred whatever rights it had in the Leases to Star VII; and that a subsequent purported assignment by MLG and Debtor to Star VII was binding as between the assignors and assignee even if the assignment would not actually vest the interests in the Leases in Star VII unless and until approved by DOI and the Nation.[14] In other words, the Nation contends the Debtor contracted away and does not have any interest in the Leases regardless of whether it obtained an interest in the Leases in connection with the Golden Bankruptcy Case and regardless of whether DOI and the Nation approve the purported transfer to Star VII.[15]

The Nation further contends that according to the Debtor's testimony at the first meeting of creditors, Madison funded Star VII's acquisition and development of the Leases; Madison later asserted a right to ownership of the Leases as a result of alleged defaults by Star

---

[13] Motion to Assume, pp 2-4.
[14] Nation Memorandum in Support of Nation's Motion for Summary Judgment, pp. 2,-3, 5-9, 13-15, 18-25, Docket No. 104.
[15] See id. at 2-3, 10-13.

VII of its obligations to Madison and under orders entered in *Madison v. Star II et al*, Colorado State Court, Case No. 2007CV252 (the "Colorado Action"); and Madison, claiming to be the owner of the interests in the Leases, designated Sagebrush as transferee of the interests from Star VII.[16] The Nation asserts it was not a party to and is not bound by the Colorado Action.[17]

Relying on a letter from Madison counsel to DOI and others, dated February 13, 2008, the Nation asserts that Madison represented to DOI that Madison had a direct contractual interest in the Leases, and by that letter was attempting to secure DOI approval of the transfer of the Leases to Madison or Sagebrush.[18]

The Nation asserts that on April 9, 2009, after commencement of Debtor's chapter 11 case, Madison filed a motion to dismiss in the Star VII bankruptcy case asserting that Madison and Sagebrush, as Madison's designee, had rights in the Leases, and that the asserted interests in the Leases of Madison/Sagebrush and Debtor are mutually exclusive and adversarial.[19]

The Nation also alleges that Madison had been in negotiations with the Secretary of the Interior and the Nation to obtain approval of the assignment from the Debtor to SA VII and of the transfers from SA VII to Madison as part of a global settlement.[20]

3.    DOI's Contentions Relating to Ownership of the Leases

DOI contends that neither DOI nor the Nation gave the necessary approvals of purported transfers of interests in the Leases to Golden Oil Company ("Golden"), of any

---

[16] Motion to Dismiss at 8-10.
[17] Nation's Objection to Motion to Dismiss, at 19, Docket No. 18.
[18] Nations Supplemental Memorandum of Law In Support of Objection to the Fee Application, p.6-7, Docket 167; and see Letter dated February 13, 2008 from counsel for Madison to DOI and others, which is Exhibit A thereto.
[19] Nations Objection to Fee Application, p. 2, Docket 156.
[20] Objection of the Nation to the Motion to Assume, Docket 18, p. 16, ¶ 54; Motion to Dismiss, p. 12.

-10-

purported transfers of interests in the Leases by Golden to MLG, by Golden and MLG to the Debtor, by the Debtor to SA VII, or by SA VII to Madison.  DOI contends that BP American Production ("BP") presently holds record title to the tribal land described in the Leases.

POSITIONS TAKEN BY MADISON WITH DOI AND IN OTHER COURTS

The Nation submitted to the Court, in support of its objection to the Fee Application, a copy of a letter dated February 13, 2008 from Madison to DOI and other governmental agencies (the Madison Letter") (Exhibit A, Docket No. 167) and a copy of a motion to dismiss or convert that Madison filed April 9, 2009 in the Star VII chapter 11 bankruptcy case, *In re Star Acquisition VII, LLC,* United States District Court, District of Colorado, Case No. 09-14425-SBB (the "Madison Motion to Dismiss or Convert") (Exhibit C, Docket No. 167). Debtor submitted to the Court, in support of its objection to the Fee Application, Findings of Fact Conclusions of Law and Order entered in the La Plata County, Colorado action described above (the "La Plata County Order") (Exhibit to Declaration of Roger G. Jones, Docket No. 161).[21]

The Madison Letter dated February 13, 2008 from Madison to DOI and others, states in part:

> Between late 2005 and September of 2006 Madison entered into a series of agreements with [Star VII] to fund the development of two oil and gas leases . . . . The oil and gas leases in question are the Jicarilla No. 71 and the Jicarilla No. 363.  In return for the funding, Star VII granted Madison a significant overriding royalty interest on each of the leases which, under certain circumstances, was escalatable and convertible to a working interest in each lease.  Under the terms of the agreements, full escalation of the overriding royalty interests and their conversion to working interest would result in Madison's replacing Star VII as the holder of the working interests in both leases.  Further, the agreement gave Madison the right under certain

---

[21]  The Madison Letter, Madison's Motion to Dismiss or Convert and La Plata County Order have not been authenticated or admitted in evidence in the contested matter arising from the Fee Application and Nations objection thereto.  However, both the Debtor and Madison submitted documents for the Court's review, and neither party objected to the Court considering the documents.  Accordingly, the Court will consider the documents.

-11-

circumstances to remove and replace Star VII at the operator of the two leases.

. . . .

When Madison filed the instruments [creating Madison's overriding royalty and interest and related rights in the Leases] with the [Nation] and with the Bureau of Indian Affairs . . . the instruments were returned to Madison with the notation that at that point Star VII, who had been named the operator of the wells/leases by the [Nation] and was in fact operating the wells/leases, did not have an approved record title interest, working interest or overriding royalty interest in either of the row leases or any of the wells on the leases.

Record title to the leases and title to the working interests apparently remained several entities back up the chain of title from Star VII.

. . . .

….(1) Star VII was not operating the two leases/wells as a prudent operator; (2) Star VII had failed to properly pay taxes and  royalties on oil and gas production for the two leases to the [Nation]; (3) Star VII had failed  to property pay taxes to the State of New Mexico on oil and gas production from the two leases; ….

. . . .

…. In late October of 2007, … Madison learned … that the [Nation] had shut down the [Leases]….

On November 30, 2007, the judge in Madison's case against Star VII entered a stipulated order . . .  under which . . . Star VII stepped aside as the operator of the Jicarilla leases and Madison was empowered to name itself or another entity to be the operator of the leases on or before December 14, 2007. . . . Madison named its affiliate, Sagebrush, as the operator of the Jicarilla leases. . . .

So as of the date of this letter, this is the situation.  Madison has a contractual interest in the two Jicarilla leases . . . . Madison has the contractual right to remove and replace Star VII as the operator ....  Madison has exercised this right . . . ."

….Madison and Sagebrush hereby respectfully request that [DOI] take action . . . in (2) identifying the steps that need to be taken to recognize Madison's interest in the two Jicarilla leases, its right to have named Sagebrush as the operator of the leases …; and (3) identifying the steps that need to be taken to have the [Nation's] cessation of operations order lifted.

-12-

Madison's Motion to Dismiss or Convert the Star VII chapter 11 case, states in part:

[Star VII and Madison entered into various agreements pursuant to which Madison agreed to invest $9,050,000 to fund the development and acquisition of the Properties [the Leases].

. . . .

Madison was only willing to invest in the Properties in exchange for substantial protections for Madison's investment in the Properties.

. . . .

Following the entry of the Stipulated Order [in the District Court for La Plata County, Colorado 'enjoining Star VII from interfering with Madison's Operation of the Properties'], [Star VII] failed to purchase the Properties or convey the Properties to Madison. Madison then moved for summary judgment against [Star VII] seeking specific performance of [Star VII's] obligation to convey the Properties to Madison or its designee . . . ."

. . . .

Pursuant to the Summary Judgment Order, on June 10, 2008, [Star VII] conveyed the Properties and all [Star VII's] other assets to Madison's designee, Sagebrush Holdings/O7G, LLC . . . .

The La Plata County Order states in part:

7. ….On June 3, 2008, the District Court entered stipulated orders granting Madison's motions for partial summary judgment on Madison's claims for specific performance . . . ordering SAVII . . . to convey to Madison or its designees all their interest in the Properties other than the Net Profits Claim (as defined below).

. . . .

13. SAVII claims that SAVII did not receive reasonably equivalent value in exchange for the transfer of SAVII's interest in the SAVII Properties, and, therefore, the transfer can be avoided as a fraudulent transfer…. However …. SAVII admitted that SAVII may never have held any interest in the SAVII Properties. Mr. Stover testified that the SAVII Properties are located on the Jicarilla Apache Reservation and that SAVII never obtained the requisite approval of the Bureau of Indian Affairs for the transfer of SAVII Properties from Platinum Oil Properties to SAVII.

-13-

G.    THE MADISON STIPULATION AND AFFIDAVIT

After the Nation objected to the Fee Application, Fognani & Faught, PLLC, as attorneys for and on behalf of Madison and Sagebrush, executed a Stipulation (the "Stipulation") (*see* Exhibit A to Debtor's Memorandum of Law in Support of Debtor's Counsel's Fee Application; Docket No. 166).   By the Stipulation, Madison and Sagebrush stipulate and admit as follows:

> [F]or all purposes in this bankruptcy case and in any adversary proceeding and/or contested matter filed herein, (i) the operating rights and working interests described in that Motion of Debtor for an Order Authorizing Assumption of Leases [Docket No. 10] (the "Leases") are property of Debtor's estate, and (ii) neither Madison nor Sagebrush hold any claims (as defined in 11 U.S.C. § 101(5) against Debtor.  Further, Madison and Sagebrush release (i) any coma and/or cause of action against Debtor that the Leases are not property of Debtor's estate and (ii) any claims (as defined in 11 US.C. §105(5) against Debtor.  Madison and Sagebrush consent to debtor's assumption of the Leases. This stipulation and release shall not impair, prejudice or affect (i) any claims Madison or Sagebrush may have against parties other than the Debtor or property of the Debtor's estate or (ii) Sagebrush's ownership of Debtor's membership interests, all of which are expressly reserved.

The Stipulation does not preclude Madison or Sagebrush from asserting an interest in the Leases if it is determined that the Leases are not property of the estate, and does not release claims of Madison and Sagebrush, if any, against the DOI or the Nation.  The Nation argues that the Stipulation does not erase the conflict existing before its execution, and does not eliminate the conflict because Madison remains free to assert an interest in the Leases as against parties other than the estate and to represent to third parties that it owns that interest.[22] The Nation further argues that if Madison is the source of funding for Debtor's plan in this case, Counsel will have a conflict in representing both the borrower and lender.[23]

---

[22] Nation's Supplemental Memorandum of Law in Support of Objection to Fee Application, p.. 8, Docket 167.
[23] *Id*. at 9.

-14-

Julia Cook, as Special Counsel with the firm of Fognani & Faught, PLLC, and as counsel for Madison and Sagebrush, executed an affidavit on November 30, 2009, stating in part:

> Neither Madison nor Sagebrush holds any claims against Debtor. Moreover, neither Sagebrush nor Madison asserts that it owns Debtor's working interest and operating rights under Jicarilla Leases 71 and 363. Debtor's assignment of its working interest and operating rights to Star Acquisition VII, LLC ("SAVII") was conditioned upon the approval of the Department of Interior which SAVII never obtained. Consequently, both Madison and Sagebrush concur in Debtor's position that SAVII did not acquire, and did not transfer to Madison or Sagebrush, the working interest and operating right under Jicailla Leases 71 and 363.[24]

## DISCUSSION

For purposes of this opinion, the Court will assume, without deciding, that Madison as a practical matter is in control of the Debtor's decisions and strategy in this bankruptcy case, even if FRI Investing Holdco, LLC, not Madison, owns all of Sagebrush's membership interests and two other investment funds own the membership interests of FRI Investing Holdco, LLC. Debtor designated David R. Lionette, senior vice President of Madison Capital Management LLC,[25] as the responsible officer of the Debtor corporation to act on its behalf in the bankruptcy case.

1.    Counsel Does Not Hold or Represent An Interest
      Adverse to the Interest of the Estate.

Counsel has been actively and aggressively asserting that Debtor owns the Leases, having taken good title from Golden or from Golden and MLG, and that Debtor's purported transfer of the Leases to Star VII was void *ab inititio*. The Court has observed Counsel in various hearings, and reviewed many of the papers Counsel has filed with the Court. The

---

[24] See Affidavit of Julia Hook, Debtor's Response to Nation's Objection to Fee Application, Exhibit A; (Docket No. 160).

[25] The relationship between Madison Capital Management LLC and Madison Capital Company is not of record.

Court is satisfied that Counsel is aggressively and competently protecting the interests of the estate, and is not pulling any punches.

It appears to the Court that Madison, as agent for various investors, is endeavoring to preserve the benefit of the Leases for those investors.[26] That can be accomplished whether good title to the Leases is vested in the Debtor or Sagebrush. At present, Madison's and Debtor's principal strategy is to obtain a determination that the Leases are property of the estate in this bankruptcy case. Madison's and the Debtor's back up strategy, to be pursued if it is determined that the Leases are not property of the estate in this case, may be to obtain a determination in a different forum, or to obtain through negotiation, a result whereby Sagebrush has or acquires good title to the Leases.[27]

The Nation asserts that Counsel, by representing the Debtor, Sagebrush and Madison, represents an interest adverse to the interest of the estate, within the meaning of 11 U.S.C. § 328(c), and therefore the Court should disallow all fees otherwise payable to Counsel for its representation of Debtor in this case.

Section 328(c) of the Bankruptcy Court provides that the Court may disallow Counsel's fees

> if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person . . . represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.[28]

---

[26] At the preliminary hearing on the Fee Application, the Court was asked to make a ruling on the Fee Application without holding an evidentiary hearing, if feasible. The Court's findings set forth in this order recite what appears from the record before this Court for purposes of ruling on the interim fee application, and do not constitute of findings of fact with preclusive effect. The fees approved by this order are approved on an interim basis, and remain subject to final approval.

[27] Sagebrush apparently is assignee of Star VII's interest, if any, in the Leases as result of the judgment Madison obtained in La Plata County, Colorado requiring Star VII to convey its interests in the Leases to Madison, and Madison having named Sagebrush as its designee.

[28] Bankruptcy Code §327(a), which governs Court approval of professionals by a chapter 11 debtor-in-possession, provides in part: "the trustee, with the court's approval, may employ one or more attorneys . . . that

-16-

Counsel terminated its representation of Sagebrush pre-petition. The proscription in 11 U.S.C. §328(c), with respect to an attorney presenting or holding an interest adverse to the interest of the estate, is in the present tense, and applise only if counsel "presently 'hold[s] or represent[s] an interest adverse to the estate,' notwithstanding any interests it may have held or represented in the past."[29] Counsel's representation of Sagebrush prior to commencement of this bankruptcy case does not provide grounds to disallow its fees.

On the other hand, Counsel has represented Madison post-petition, including in the Star VII bankruptcy case, and continues to represent Madison in a variety of matters. Under 11 U.S.C. §§327(a) and 328(c), Counsel has a conflict of interest if Madison has an interest that is materially adverse to the interest of the estate.

A debtor-in-possession has a fiduciary duty to creditors and shareholders.[30] The debtor's fiduciary duty includes maximizing the value of the bankruptcy estate for the benefit of creditors as a whole.[31] Counsel for the debtor-in-possession has a duty to assist the debtor in carrying out its fiduciary duties.[32] To appropriately assist the debtor-in-possession in carrying out its fiduciary duties, counsel employed under 11 U.S.C. §327(a) must have an undivided loyalty to the debtor and the estate.[33] The requirement of 11 U.S.C. §327(a) that

---

do not hold or represent an interest adverse to the estate . . . to represent or assist the trustee in carrying out the trustee's duties under this title.

[29] *In re AroChem Corp.*, 176 F.3d 610, 623 (2nd Cir.1999)(construing 11 U.S.C. §§327(a)). *Accord In re 7677 East Berry Avenue Associates L.P.,* __ B.R. __ 2009 WL 4186743, *4 (Bankr.D.Colo. 2009).

[30] *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 355-65, 105 S.Ct. 1986, 1994-95 (1985). See also *Interwest*., 23 F.3d at 317 (recognizing the fiduciary duty of a debtor-in-possession to it creditors); *In re Northwest Airlines Corp*. 483 F.3d 160, 181 (2nd Cir. 2007) (same); *In re Coleman*, 426 F.3d 719, 729 (4th Cir. 2005) (same).

[31] *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3rd Cir. 2004) (debtor-in-possession has a fiduciary duty to maximize the value of the bankruptcy estate for the benefit of creditors); *In re Tenn-Fla Partners*, 226 F.3d 746, 749 (6th Cir. 2000) (the debtor-in-possession as a fiduciary has an obligation to maximize the value of the property for all creditors).

[32] *Interwest*, 23 F.3d at 318.

[33] *Interwest*, 23 F.3d at 316 (counsel for a debtor-in-possession owed the debtor a duty ofundivided loyalty); *In re R & R Associates of Hampton*, 402 F.3d 257, 266 (1st Cir. 2005) (counsel for a debtor-in-possession owed the debtor a duty of care, candor, and undivided loyalty)

-17-

counsel for a debtor- in-possession may not represent or hold an interest adverse to the estate, and the authority of the Court under 11 U.S.C. § 328(c) to deny compensation to a professional who represents or holds such an interest, are designed to "deter inappropriate influences upon the undivided loyalty of court-appointed professionals *throughout their tenure.*"[34]

Section 327(a) of the Bankruptcy Code imposes a *per se* disqualification if counsel for the estate has an actual conflict of interest, whereas the Court has discretion to disqualify counsel that has a potential conflict of interest.[35] Whether an attorney represents or holds an interest adverse to the interest of the estate, because of either an actual or potential conflict of interest, should be determined on a case-by-case basis.[36] Disqualification based on a potential conflict of interest should take into account the nature and extent of the potential conflict, and the likelihood that the potential conflict might become an actual one.[37]

Neither the phrase "interest adverse to the estate," as used in 11 U.S.C. §327(a), nor the phrase "interest adverse to the interest of the estate" as used in 11 U.S.C.§328, is defined in the Bankruptcy Code.[38] The Court in *In re Roberts*, 46 B.R. 815, 827 (Bankr.D.Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (Bankr.D.Utah 1987)(en banc), articulated the following definition of "interest adverse to the estate:"

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.

---

[34] *Rome v. Braunstein*, 19 F.3d 54, 57 (1st Cir. 1994) (applying 11 U.S.C. §327(a)). See also *In re Marble*, 2007 WL 1556836, *3 (Bankr. N.D.Tex. 2007); *In re Ashbaugh and Hall*, 2005 WL 4705070, *4 n. 15 (Bankr. D.Idaho 2005).
[35] *In re Pillowtex, Inc*., 304 F.3d 246, 251 (3rd Cir. 2002); *In re Marvel Entertainment Group, Inc.* 140 F.3d, 46, 476 (3dr Cir. 1998); *In re Dick Cepek, Inc*., 339 B.R. 730, 740 (9th Cir.BAP 2006).
[36] *Dick Cepek, Inc*., 339 B.R. at 740.
[37] *Id.*
[38] The two phrases appear to mean the same thing, even though worded differently.

This Court will adopt that definition, which has been adopted or applied by: the Tenth Circuit Bankruptcy Appellate Panel,[39] at least three Circuit Courts of Appeals,[40] and by many bankruptcy courts.[41]

It appears to the Court that, at present, Madison does not have an interest that is materially adverse to the estate in this case. Madison and the Debtor have a common interest in establishing that the Leases are property of the estate. BABC has been aggressively asserting this interest for the benefit of the estate. If Madison's interest should change in the event it is determined that the Leases are not property of the estate, then at that point the estate no longer would have an interest in the disposition of the Leases and no conflict would arise.

The Court does have a concern, however, about the Nation's allegation that Madison has been in negotiations with DOI and the Nation to obtain approval of the assignment from the Debtor to SA VII and of the transfers from SA VII to Madison as part of a global settlement.

In the circumstances of this case, the Court will take a "wait and see" approach as to whether a conflict develops such that the estate should be required to retain separate counsel that does not represent Madison. If an actual conflict is developing or has developed while Counsel is employed by the Debtor as debtor-in-possession, or a potential conflict develops that is prejudicial to the estate, Counsel's employment status by the estate and its compensation may be revisited. This "wait and see" approach has been taken by several

---

[39] *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998).
[40] *In re West Delta Iol CO*. 432 F.3d 347, 356 (5th Cir. 2005); *In re AroChem Corp.*, 176 F.3d 610, 623 (2nd Cir.1999); *In re Crivello*, 134 F.3d 831, 835 (7th Cir.1998).
[41] Two recent bankruptcy court cases within the Tenth Circuit applying the *Roberts* definition are *In re Boot Hill Biofuels, LLC*, 2009 WL 982192, *8 (Bankr. D. Kan 2009) and *In re 7677 East Berry Avenue Associates L.P.*, __ B.R. __ 2009 WL 4186743, *4 (Bankr D. Colo. 2009).

courts,[42] and is consistent with the notion that the Court has discretion to determine whether a potential conflict of interest is sufficient to warrant disqualification of counsel or denial of compensation. It is also consistent with the language of 11 U.S.C. §328(c), under which "the court *may* deny allowance of compensation [to] . . . a professional person employed under section 327 . . . if, at any time during such professional person's employment . . . such professional person . . . represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." (emphasis added).

The Court will adopt this approach in the circumstances of this case for several reasons. First, Counsel has been aggressively and competently asserting the estate's interest before this Court. Second, it is not at all clear whether a determination that the Leases are property of the estate would maximize value for the creditors of the estate as a whole. Third, the only party in interest that objected to the Fee Application, or raised the conflict of interest issue, is the Nation who is advocating that the Leases are not property of the estate. The fact that the Nation is seeking to disqualify Counsel supports a finding that Counsel is zealously advocating the estate's interest to establish that the Leases are property of the estate. Fourth, based on the information available to the Court to date, it appears that the best chance of preserving the Leases for the benefit of either the Debtor or Sagebrush is by the Debtor pursing its claims that it owns the Leases.[43] Finally, the conflict of interest issue was not raised until almost nine months had elapsed following commencement of Debtor's chapter 11 case, and extensive discovery and litigation had taken place in relation to whether the Leases

---

[42] *In re Boot Hill Biofuels, LLC,* 2009 WL 982192, *11 (Bankr. D. Kan 2009); *In re White Glove, Inc.*, 1998 WL 226781, *4 (Bkrtcy.E.D.Pa.1998); *In re O.P.M. Leasing Services*, 16 B.R. 932, 936 (Bankr . S.D.N.Y.1982).

[43] The Court is not making any comment on the prospect of the Debtor prevailing on its claim that the Leases are property of the estate.

-20-

are property of the estate.  A requirement that Debtor retain new counsel at this time would be expensive and potentially prejudicial to the estate.

> 2.    The Court Will Not Deny Compensation to Counsel Based on Noncompliance with Bankruptcy Rule 2014(a)

Bankruptcy Rule 2014(a) "requires a professional to disclose all of its relevant connections in its disclosure so that the bankruptcy court can determine if there are any conflicts or potential conflicts."[44]  The duty of disclosure is of sufficient import that a bankruptcy court has authority, in appropriate circumstances, to deny allowance of fees or to require disgorgement if the duty is not discharged.[45]  The duty of disclosure under Bankruptcy Rule 2014(a) is a continuing duty to disclose any conflict or potential conflict if and as it arises post-petition.[46]

BABC did disclose in its disclosure made pursuant to Bankruptcy Rule 2014(a), filed March 2, 2009, that (1) it represented Sagebrush pre-petition; (2)t Sagebrush owns 100% of the Debtor's membership interests; (3) BABC represents Madison; and (4) Madison may indirectly own an interest in Sagebrush. (Docket No. 3).  In the Motion to Assume Leases, filed three days later, BABC, on behalf of the Debtor, made further disclosure that Debtor had assigned the Leases to Star VII, that Star VII assigned the Leases to Sagebrush, and that Debtor asserts it still owns the Leases because its assignment to Star VII was void *ab initio*.

---

[44] *In re Citation Corp.*, 493 F.3d 1313, 1321 (11th Cir. 2007).
[45] *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (10th Cir.BAP 1997); *In re Downs*, 103 F.3d 472, 479 (6th Cir.1996) ("[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations [of disclosure] . . . ."); *In re EBW Laser, Inc.*, 333 B.R. 351, 359-60 (Bankr. M.D.N.C. 2005) (a bankruptcy court my disqualify counsel or deny compensation as a sanction for failure to comply with the disclosure requirement). *Hancock v. Limor*, 2007 WL 4481436, *6, (M.D.Tenn. Dec. 18, 2007) (even an innocent failure of counsel to discharge the duty of disclosure may result in denial of compensation).
[46] *I.G. Petroleum LLC v. Fenasci* ( In Re West Delta Oil Co., Inc.), 432 F.3d 347, 355 (5th Cir.2005).

(Docket No. 10).[47]  BABC has suggested that the Madison Stipulation, filed December 16, 2009, reflected the position of Madison throughout the pendency of this chapter 11 case.

BABC did not disclose until recently, however, the efforts of Madison in the La Plata County, Colorado action to obtain an assignment of the Leases to Sagebrush, or in the Star VII chapter 11 case to protect that assignment, or why such action was consistent with the ultimate primary goal of Debtor, Sagebrush and Madison to establish that Debtor owns the Leases.  In the circumstances of this case, the Court does not find this lack of disclosure to have been a willful evasion by BABC of its duty of disclosure, or otherwise sufficient to disqualify Counsel or disallow its fees.  However, the Court will direct BABC, by January 15, 2010, to file a verified supplement to its Rule 2014(a) disclosure, filed March 2, 2009, to more fully disclose in the Rule 2014(a) disclosure itself: (i) Debtor's assignment of the Leases to Star VII; (ii) Madison's agreement with Star VII that was the subject of the La Plata County, Colorado action; (iii) Star VII's assignment of the Leases to Sagebrush as Madison's assignee; (iv) why the actions taken by Madison in the La Plata County, Colorado action and Star VII chapter 11 case are consistent with the positions taken by Debtor that the Leases are property of the estate; and (iv) any efforts made by Madison or Sagebrush, post-petition, to negotiate an arrangement under which Sagebrush, not the Debtor, owns the Leases.  The Court also reminds BABC of its continuing duty under Bankruptcy Rule 2014(a) duty to disclose any conflict or potential conflict if and as it arises post-petition.

---

[47]  Even though this information was disclosed within days of Counsel's filing of the Rule 2004(a) disclosure, disclosure of information required by Bankruptcy Rule 2014(a) should be made in the Rule 2004(a) disclosure itself, or in an amendment or supplement to the disclosure.  The Court is not required to search the record for information counsel is required by Bankruptcy Rule 2014(a) to disclose. Moreover, disclosure made in motions, objections, and responses are not verified by counsel, as required by Rule 2014(a).

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: December 23, 2009
Copies to:

Roger Jones
Austin L McMullen
Bradley Arant Boult Cummings, LLP
1600 Division St, Ste 700
Nashville, TN 37203

-and-

Jennie D Behles
PO Box 7070
Albuquerque, NM 87194-7070

*Attorneys for Debtor*

Robert J. Labate
Joi M. Thomas
HOLLAND & KNIGHT, LLP
131 South Dearborn Street, Suite 3000
Chicago, IL 60603
*Attorneys for Jicarilla Apache Nation*

Leonard Martinez-Metzgar
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

Nancy S. Cusack
Hinkle, Hensley, Shanor & Martin LLP
PO Box 2068
Santa Fe, NM 87504-2068
*Attorneys for Jicarilla Apache Energy
Corporation (JAECO)*

Manuel Lucero
Assistant United State Attorney
Dori E. Richards
Special Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
*Attorneys for US Department of the
Interior, Bureau of Indian Affairs*

James C. Jacobsen
Assistant Attorney General
111 Lomas Blvd., NW, Suite 300
Albuquerque, NM 87102
*Attorneys for New Mexico Taxation and
Revenue Department*

Omer F. Kuebel, III
C. Davin Boldissar
Locke Lord Bissell & Liddell
601 Poydras Street, Suite 2660
New Orleans, LA 70130-6036
*Attorneys for BP America Production*

De Ann L. Owen
Office of the Solicitor, Rocky Mountain
Region
755 Parfet Street, Suite 151
Lakewood, CO 80215
*Attorney for Minerals Management
Service (MMS)*

-23-